Filed 12/4/20; Certified for Partial Pub. 12/31/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SABID ALI et al.,<br><br>    Plaintiffs and Respondents,<br><br>v.<br><br>DAYLIGHT TRANSPORT, LLC,<br><br>    Defendant and Appellant. | A157104<br><br>(Alameda County Super. Ct. No. RG18915217) |

Daylight Transport, LLC (appellant) appeals from the trial court's order denying its motion to compel arbitration and stay the underlying action in this matter arising from the proposed class action lawsuit filed by Sabid Ali and Eric Bland (collectively respondents), alleging they were misclassified as independent contractors and, therefore, denied certain wage and hour protections under California law. On appeal, appellant challenges the trial court's findings that (1) respondents are exempt from the Federal Arbitration Act (FAA) (9 U.S.C. § 1, et seq.) because they are transportation workers engaged in interstate commerce, and (2) the agreement to arbitrate between appellant and each respondent was unconscionable and unenforceable. We shall affirm the trial court's order.

1

# FACTUAL BACKGROUND

Evidence submitted in support of and opposition to the motion to compel arbitration—which includes, inter alia, documentary evidence; the declaration and deposition of Jim McCarthy, appellant's vice president of finance and chief financial officer; and the declarations of both respondents—is as follows.

Appellant is "an established expedited less-than-truck load ('LTL') carrier" that is "in the business of managing, coordinating, and scheduling expedited LTL shipments across the country." Appellant has locations throughout California and the United States. The "vast majority" of appellant's work involves interstate transport.

For pick-up and delivery services, appellant contracts with independent truck drivers. Although the freight transported by these truck drivers "is predominantly interstate freight, [it] also includes intrastate freight." Documents McCarthy had reviewed showed that the freight respondents handled "either originated out of state or had final delivery destination out of state." However, appellant's independent contractor truck drivers in California, including respondents, "only provided pick-up and delivery services within the state of California" and respondents "never crossed state lines in moving freight for [appellant's] customers."[1]

Respondents Ali and Bland each entered into an "Independent Contractor Service Agreement" (Agreement) before beginning to drive freight

---

[1] In April 2016, when Bland renewed his commercial driver's license, he initially indicated on a Department of Motor Vehicles form that he would be driving intrastate only. However, appellant's employees thereafter instructed him "to change the certification to be for *interstate* commercial driving because [he] was moving freight that crosses state lines."

for appellant, and regularly signed materially identical Agreements or contract extension addenda over the time they drove for appellant.

All of the Agreements respondents signed contained an identical arbitration provision, which stated:

"6.02 <u>Arbitration</u>.  Any claim, dispute or controversy including, but not limited to the interpretation of any federal, statutory or regulatory provisions purported to be encompassed by this Agreement (i.e., the Leasing Regulations), any alleged breach of this Agreement, or the enforcement of any statutory rights emanating or relating to this Agreement shall be resolved on an individual basis (and not as part of a class action) exclusively between Contractor and Company by final and binding arbitration to be held in the County and State of Contractor's domicile before the American Arbitration Association ('AAA').  The arbitration proceeding shall be governed by the following rules:

"(a) A written demand for arbitration must be filed with the AAA and a copy of the filing provided to the other party within one hundred twenty (120) days of the occurrence of the claimed breach or other event giving rise to the controversy or claim.  Failure to make such timely demand for arbitration shall constitute an absolute bar to the institution of any proceedings and a waiver of the claim.

"(b) The demand for arbitration shall identify the provision(s) of this Agreement alleged to have been breached and shall state the issue proposed to be submitted to arbitration and the remedy sought.  The copy of the demand shall be filed with the American Arbitration Association at 1750 Two Galleria Tower, 13455 Noel Road, Dallas, Texas 75240-6636 with a request that the demand be forwarded to the appropriate AAA Regional Office.

3

"(c) As to any dispute or controversy which under the terms of this Agreement is a proper subject of arbitration, no suit at law or in equity based on such dispute or controversy shall be instituted by either party other than a suit to conform, enforce, vacate, modify or correct the award of the arbitrator(s) as provided by law; provided, however, that this clause shall not limit Company's right to obtain any provisional remedy including, without limitation, injunctive relief, writ for recovery of possession or similar relief from any court of competent jurisdiction, as may be necessary in Company's sole subjective judgment to protect its property rights . . . .

"(d) General pleadings and discovery processes related to the arbitration proceeding shall comply with the Federal Rules of Civil Procedure.

"The Arbitration proceeding shall be governed by the AAA's Commercial Arbitration Rules to the extent that such Rules are not inconsistent with the immediately preceding subparts (a) through (d)." (Agreement, § VI., cl. 6.02.)

Ali worked for appellant from 2007 to September 2016, and Bland worked for appellant from August 2014 to January 2018, as pickup and delivery drivers. Appellant classified and paid both respondents as independent contractors during the entire time of their work for appellant. Appellant required them to sign the Agreements in order to work as drivers. Ali signed approximately 10 agreements and Bland signed approximately six Agreements and extension addenda over the course of their work for appellant in order to continue driving for the company. Each of the Agreements contained the identical arbitration provision.

Appellant's terminal service managers presented the Agreements to both Ali and Bland, who were not involved in drafting any part of them. Nor

4

were they given any opportunity to negotiate the terms of the Agreements, including the arbitration provision, or review the terms with an attorney before signing them. Ali, for example, would receive the Agreement or extension addendum "the night before he had to sign it" and "could not be dispatched to make pickups or deliveries without signing" the Agreement "as presented to [him]." If he failed to do so, he would lose his job with appellant. In another example, in late 2017, Bland received notice of an extension addendum two to three days before the New Year's holiday, which he was directed to sign by New Years' Eve, in order to continue working. In addition, appellant did not provide either respondent with a copy of the AAA commercial arbitration rules referred to in the Agreements.

## PROCEDURAL BACKGROUND

On August 2, 2018, respondents filed a complaint against appellant on behalf of themselves and a putative class of California delivery drivers, requesting relief from appellant's "unlawful misclassification of former and current Daylight delivery drivers as 'Independent Contractors,' " and alleging that, as a result of the misclassification, appellant had violated a number of Labor Code and wage order provisions, as well as the law against unfair competition. The causes of action included (1) failure to pay minimum wage (Lab. Code, §§ 226.2, 1182.11, 1182.12, 1194, 1104.2, 1197 et seq.; Industrial Welfare Commission (IWC) Wage Order No. 9; Minimum Wage Order); (2) failure to reimburse employment expenses (Lab. Code, §§ 2802, 2804; IWC Wage Order No. 9); (3) unlawful deductions from wages (Lab. Code, §§ 221, 223; IWC Wage Order No. 9); (4) failure to provide off-duty meal periods (Lab. Code, §§ 226.7, 512; IWC Wage Order 9); (5) failure to provide off-duty paid rest periods (Lab. Code, §§ 226.2, 512; IWC Wage Order No. 9); (6) failure to furnish accurate wage statements (Lab. Code, §§ 226, 226.3; IWC

5

Wage Order No. 9); (7) waiting time penalties (Lab. Code, §§ 201–203); and (8) violations of California's Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.).

On October 19, 2018, appellant filed a motion to compel arbitration and stay the underlying action, arguing chiefly that (1) the FAA applied to the Agreements between the parties and the FAA's exemption for transportation workers engaged in interstate commerce was inapplicable to respondents, and (2) under the FAA, the arbitration provision applied to the claims asserted in respondents' lawsuit, respondents had agreed to arbitrate those claims, and no grounds—including, in particular, unconscionability—existed for revocation of the arbitration provision.

On November 26, 2018, respondents filed a first amended complaint, adding a cause of action under the Private Attorneys General Act (Lab. Code, § 2698 et seq.), based on appellant's alleged Labor Code violations.

On March 1, 2019, the trial court denied appellant's motion to compel arbitration and stay the action, after finding that the arbitration provision in the Agreements was unenforceable. First, the court found that the FAA did not apply to the Agreements between the parties because respondents fell within the FAA's exemption for transportation workers engaged in interstate commerce. (9 U.S.C. § 1.)[2] Second, the court found that the arbitration provision was both procedurally and substantively unconscionable and unenforceable under applicable state law.

---

[2] Section 1 provides an exemption from FAA coverage to "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." (9 U.S.C. § 1.)

On March 26, 2019, appellant filed a notice of appeal.[3]

## DISCUSSION

### I. *FAA Preemption and Appellant's Abandonment of that Issue*

#### A. *Trial Court Background*

In its motion to compel arbitration, appellant first argued that respondents were required to arbitrate the claims asserted in their complaint because the FAA applied to the Agreements between the parties and the section 1 transportation worker exemption to arbitration was inapplicable to respondents because they did not personally cross state lines while driving for appellant. In its order denying the motion to compel, the trial court first found that appellant had "met its burden of demonstrating that the Independent Contractor Agreements are contracts evidencing a transaction involving commerce," and were therefore covered by the FAA. The court further found, however, that the transportation worker exemption applied because appellant's "evidence demonstrates that the class of drivers that includes [respondents] delivered interstate freight" and that appellant instructed Bland to get an interstate driver's license. The court therefore concluded respondents had satisfied their burden of demonstrating that the FAA did not apply to the Agreements. The court next addressed whether the arbitration provision was nevertheless enforceable under California law, focusing on the contract defense of unconscionability, and ultimately finding the provision unenforceable due to its procedural and substantive unconscionability.

In its opening brief on appeal, appellant argued that the trial court erred when it found the FAA inapplicable to respondents' claims, before

---

[3] On July 13, 2020, we granted the unopposed application of Public Justice for leave to file an amicus curiae brief in support of respondents' position on the question of whether they are exempt from the FAA.

7

turning to the issue of unconscionability and enforceability of the arbitration provision under state law. In its reply brief, however, appellant asserted that this court need not reach the question of whether the FAA applies to the parties' Agreements or whether respondents fall under the FAA's transportation worker exemption because those questions have "no bearing on this appeal. The trial court's sole basis for declining to enforce the Agreement was that it was unconscionable under California law, and [respondents] offer no other basis for declining to enforce it. [Appellant] does not contend that California's unconscionability doctrine conflicts with or is preempted by the FAA. Hence that doctrine applies regardless of whether the Agreement is covered by the FAA, and this court need not resolve whether it is."

Appellant further claimed in its reply brief that it "has not changed its position as to relevance of the FAA to this appeal. [Appellant] has always maintained that the Agreement fully complies with California law. [Citation.] However, as [respondents] can defend the order on any grounds, and are not limited to those stated in the order, [appellant] was forced to raise the application of the FAA, in case [respondents] raised grounds for nonenforcement which are preempted by the FAA. As [respondents] have not done so either below or on appeal, the issue is now moot."

In its amicus brief, amicus curiae Public Justice responded that, "[a]fter spending thirteen pages of its opening brief arguing that the [FAA] applies [citation], [appellant] changes course in its reply brief . . . . But where it applies, the [FAA] limits what state law can do, for the [FAA] preempts state law with which it conflicts. If the [FAA] does not apply, state law that would otherwise be preempted is applicable. Thus, before this court can resolve this appeal as a matter of state law, answering the statutory

8

interpretation question posed by the transportation-worker exemption is a necessary first step in order to determine what body of state law it may permissibly apply."

## B. *Legal Analysis*

In *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333 (*Concepcion*), the United States Supreme Court discussed the history and import of the FAA, which "was enacted in 1925 in response to widespread judicial hostility to arbitration agreements. [Citation.] Section 2, the 'primary substantive provision of the Act' [citation], provides in relevant part, as follows:

" 'A written provision of any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' (9 U.S.C. § 2.)

"We have described this provision as reflecting both a 'liberal federal policy favoring arbitration' [citation], and the 'fundamental principle that arbitration is a matter of contract' [citation]. In line with these principles, courts must place arbitration agreements on an equal footing with other contracts [citation], and enforce them according to their terms [citation]." (*Concepcion, supra,* 563 U.S. at p. 339.)

Section 1 of the FAA, however, "provides a limited exemption from FAA coverage to 'contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.' (9 U.S.C. § 1.) In *Circuit City* [*Stores, Inc. v. Adams* (2001) 532 U.S. 105, 119], the United States Supreme Court concluded section 1's catchall phrase ' "any other class of workers engaged in foreign or interstate commerce" ' does not refer to *all* workers involved in foreign or interstate commerce, but rather

9

only to 'transportation workers.' [Citation.]" (*Muller v. Roy Miller Freight Lines, LLC* (2019) 34 Cal.App.5th 1056, 1062; see *id.* at p. 1069 [truck driver who drove intrastate portion of interstate trips for transportation company was engaged in interstate commerce and therefore exempt from FAA under section 1 because company's goods originated primarily outside of California]; *Nieto v. Fresno Beverage Co., Inc.* (2019) 33 Cal.App.5th 274, 284 [intrastate delivery driver was exempt under section 1 of FAA because he "was engaged in interstate commerce through his participation in the continuation of the movement of interstate goods to their destinations"].)

In *Concepcion*, the high court addressed whether certain claims, such as the alleged unconscionability of an arbitration agreement, may be raised as a defense to the agreement's enforceability, notwithstanding the FAA's preemption of state law. The court explained that the final phrase of section 2 of the FAA "permits arbitration agreements to be declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of any contract.' This saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue. [Citations.]" (*Concepcion*, *supra*, 563 U.S. at p. 339.)

Recently, in *OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111 (*OTO*), our Supreme Court discussed how California law interacts with the FAA as to the enforceability of arbitration agreements: "California law strongly favors arbitration. Through the comprehensive provisions of the California Arbitration Act (Code Civ. Proc., § 1280 et seq.), 'the Legislature has expressed a "strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution." ' [Citation.] As with the

10

FAA (9 U.S.C. § 1 et seq.), California law establishes 'a presumption in favor of arbitrability.' [Citation.] An agreement to submit disputes to arbitration 'is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract.' (Code Civ. Proc., § 1281[4]; see 9 U.S.C. § 2.)

" ' "[G]enerally applicable contract defenses, such as . . . unconscionability, may be applied to invalidate arbitration agreements without contravening" the FAA' or California law. [Citations.] Unconscionability can take different forms depending on the circumstances and terms at issue. However, the doctrine's application to arbitration agreements must rely on the same principles that govern all contracts. [Citation.] The degree of unfairness required for unconscionability must be as rigorous and demanding for arbitration clauses as for any other contract clause. [Citation.]" (*OTO, supra,* 8 Cal.5th at p. 125.)

In the present case, appellant acknowledged in its reply brief that respondents have not raised any defenses to the arbitration provision that conflict with, and would therefore be preempted by, the FAA. Considering appellant's abandonment of the issue of FAA preemption (see *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 160 [in light of appellant's repudiation of an argument raised in its opening brief, appellate court would "treat the claim as abandoned"]), and its acknowledgement that respondents' unconscionability claims under California law could potentially apply regardless of the FAA's arguable applicability (see *OTO, supra,* 8 Cal.5th at p. 126), we will go directly to the question of whether the arbitration provision is unconscionable and unenforceable under California law.

---

[4] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

11

## II. *Unconscionability*

Appellant challenges the trial court's findings that, under California law, the arbitration provision in the Agreement between it and respondents is procedurally and substantively unconscionable, and so permeated with unconscionability that severance of the unconscionable terms is not possible.

"The general principles of unconscionability are well established. A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party. [Citation.] Under this standard, the unconscionability doctrine ' "has both a procedural and a substantive element." ' [Citation.] 'The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. [Citations.] Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided.' [Citation.]

"Both procedural and substantive unconscionability must be shown for the defense to be established, but 'they need not be present in the same degree.' [Citation.] Instead, they are evaluated on ' "a sliding scale." ' [Citation.] '[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to' conclude that the term is unenforceable. [Citation.] Conversely, the more deceptive or coercive the bargaining tactics employed, the less substantive unfairness is required. [Citations.] A contract's substantive fairness 'must be considered in light of any procedural unconscionability' in its making. [Citation.] 'The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement.' [Citation.]

"The burden of proving unconscionability rests upon the party asserting it. [Citations.] 'Where, as here, the evidence is not in conflict, we review the trial court's denial of arbitration de novo.' [Citation.]" (*OTO, supra*, 8 Cal.5th at pp. 125–126.)

## A. *Applicability of California Law Applying the Unconscionability Doctrine to Arbitration Agreements in the Employment Context*

As a preliminary matter, appellant argues that because the Agreements between the parties make clear that respondents are independent contractors, California cases addressing unconscionability in the employee-employer context are inapplicable here.

In *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 115 (*Armendariz*), our high court observed that "[a]rbitration is favored in this state as a voluntary means of resolving disputes, and this voluntariness has been its bedrock justification." Nevertheless, "[g]iven the lack of choice and the potential disadvantages that even a fair arbitration system can harbor for employees, we must be particularly attuned to claims that employers with superior bargaining power have imposed one-sided, substantively unconscionable terms as part of an arbitration agreement." (*Ibid.*)

Here, although the Agreements state that respondents are independent contractors, respondents' complaint is based primarily on the contention that they were misclassified as independent contractors, and were instead employees, entitled to certain protections under the Labor Code. Recently, in *Subcontracting Concepts (CT), LLC v. De Melo* (2019) 34 Cal.App.5th 201 (*Subcontracting Concepts*), a panel of this Division addressed a similar contention by a purported employer based on facts that were nearly identical to those in this case. We first discussed two appellate opinions that had rejected a similar argument: "In *Ramos* [*v. Superior Court* (2018) 28

13

Cal.App.5th 1042, 1046 (*Ramos*)], the trial court granted a law firm's motion to compel arbitration after Ramos, an ' "Income Partner" ' at the firm, brought a California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.; FEHA) claim.  On appeal, the parties disputed whether *Armendariz* applied to the arbitration clause in the parties' partnership agreement, with the law firm contending it did not because Ramos was not an employee." (*Ramos*, at pp. 1055–1056.)

"Division One of this District found 'it unnecessary to resolve the question of whether Ramos was an employee' for purposes of 'deciding whether the parties' arbitration agreement [was] enforceable,' concluding that *Armendariz* should guide its arbitrability determination because, inter alia, the law firm 'was in a superior bargaining position vis-à-vis [the partner] akin to that of an employer-employee relationship, and there is no evidence in this record that Ramos had an opportunity to negotiate the arbitration provision.' (*Ramos*, *supra*, 28 Cal.App.5th at p. 1056.)

"Likewise, in *Wherry* [*v. Award, Inc.* (2011) 192 Cal.App.4th 1242, 1249 (*Wherry*)], the appellate court applied *Armendariz's* requirements in finding unconscionable an arbitration agreement between the parties even though the plaintiffs were independent contractors.  In its analysis of substantive unconscionability, the court stated:  'That plaintiffs are independent contractors and not employees makes no difference in this context.  The contract by which they were to work for defendants contained a mandatory arbitration provision.' " (*Subcontracting Concepts, supra,* 34 Cal.App.5th at pp. 208–209.)

In *Subcontracting Concepts*, we ultimately concluded that because "there plainly was a power imbalance between the parties, respondent was required to sign an agreement containing a mandatory arbitration provision,

and the underlying claims involve whether respondent was an employee or an independent contractor," it was "both unnecessary and inappropriate to resolve the question of whether respondent was an employee for purposes of our unconscionability determination under California law. [Citations.]" (*Subcontracting Concepts*, *supra*, 34 Cal.App.5th at pp. 209–210.)

Likewise, in the case before us, we find that it is "both unnecessary and inappropriate" to determine whether respondents were employees for purposes of our unconscionability determination. (*Subcontracting Concepts*, *supra*, 34 Cal.App.5th at p. 210.) Whether or not a finder of fact ultimately agrees with respondents' allegations that they were employees, "the relationship between [appellant and respondents] was characterized by a power imbalance analogous to that of an employer-employee relationship" and was "sufficiently similar to that of an employee-employer relationship to conclude the parties' arbitration agreement is subject to *Armendariz* requirements." (*Ramos*, *supra*, 28 Cal.App.5th at pp. 1057–1058.)

## B. *Procedural Unconscionability*

"A procedural unconscionability analysis 'begins with an inquiry into whether the contract is one of adhesion.' [Citation.] An adhesive contract is standardized, generally on a preprinted form, and offered by the party with superior bargaining power 'on a take-it-or-leave-it basis.' [Citations.] Arbitration contracts imposed as a condition of employment are typically adhesive [citations]. The pertinent question, then, is whether circumstances of the contract's formation created such oppression or surprise that closer scrutiny of its overall fairness is required. [Citations.] ' " '*Oppression* occurs where a contract involves lack of negotiation and meaningful choice, *surprise* where the allegedly unconscionable provision is hidden within a prolix printed form.' " ' [Citations.]" (*OTO*, *supra*, 8 Cal.5th at p. 126.)

15

"With respect to *preemployment* arbitration contracts, [our Supreme Court has] observed that 'the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement.' [Citation.] This economic pressure can also be substantial when employees are required to accept an arbitration agreement in order to *keep* their job." (*OTO*, *supra*, 8 Cal.5th at p. 127, quoting *Armendariz*, *supra*, 24 Cal.4th at p. 115.)

In the present case, the trial court found that the Agreements were procedurally unconscionable because appellant "was in a superior bargaining position and presented the contracts on a take it or leave it basis." We agree that the undisputed evidence shows that the Agreements were contracts of adhesion. (See *OTO*, *supra*, 8 Cal.5th at p. 126.) Each Agreement consisted of a standardized, preprinted form in small font, with the arbitration provision appearing near the end of a 15-page contract containing multiple provisions. Specifically, the arbitration provision is the 27th of 39 clauses contained within the Agreement and is the second of three clauses set forth under a heading entitled, "Administrative and Related Matters."

Both respondents stated that they were under pressure to sign the Agreements and extension addenda quickly without any opportunity to negotiate or consult an attorney. They were given the Agreements with short deadlines—between one and four days—to sign them, initially as a condition of working as a driver for appellant, and subsequently as a repeated precondition to continued work. These circumstances "demonstrate significant oppression." (*OTO*, *supra*, 8 Cal.5th at p. 127.)

Appellant points out that in his declaration, Jim McCarthy, appellant's chief financial officer, provided conflicting evidence on this issue, stating, "As is [appellant's] general practice, [each respondent] was afforded an opportunity to review the Independent Contractor Agreement and was free to take the Independent Contractor Agreement to be reviewed by an attorney of his choosing. If [either respondent] so desired, he also could have engaged [appellant] in discussions over the terms of the Independent Contractor Agreement. In other words, [each respondent] could have asked questions, raised concerns, or offered to negotiate any terms of the Independent Contractor Agreement."

In his subsequent deposition, however, when asked about the specific circumstances surrounding respondents' signing of the initial and subsequent Agreements and extension addenda, McCarthy acknowledged that he was not present when the Agreements were presented to or signed by either respondent and did not know who gave them the Agreements to sign or how they received them. He did not know when respondents' received the Agreements for signature or how long they had to review them before signing. McCarthy acknowledged that he did not even know whether either respondent was ever given an opportunity to review the Agreements before signing them. Nor did he know whether either respondent ever had the opportunity to negotiate the terms of any of the Agreements they signed during their time driving for appellant. Regarding the extension addenda that current drivers sometimes were required to sign to extend their contracts in lieu of a new Agreement, if a driver did not sign the addendum, the driver's relationship with appellant would terminate.

In light of McCarthy's detailed deposition testimony in which he admitted that he did not know any of the particular circumstances

17

surrounding respondents' signing of their Agreements with appellant, we find that the evidence is *not* in conflict on this point. Instead, the sole and uncontroverted evidence regarding those circumstances, provided in Ali's and Bland's declarations, is that Ali and Bland were under pressure to sign the initial and subsequent Agreements and extension addenda quickly and that neither respondent was given the opportunity to consult an attorney or negotiate the terms of the Agreements before signing them as a condition of driving for appellant. This evidence shows significant oppression. (See *OTO, supra*, 8 Cal.5th at p. 127.)

In addition, the arbitration provision stated that "[t]he Arbitration proceeding shall be governed by the AAA's Commercial Arbitration Rules," but the provision failed to state *what* those rules were and appellant did not provide either respondent with a copy of them. (See *Subcontracting Concepts, supra*, 34 Cal.App.5th at p. 211; *Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 245 (*Carbajal*).) The AAA rules, which were neither articulated in nor attached to the arbitration provision, contain a cost sharing requirement, which respondents have challenged in the present case. Specifically, rule 54 of the AAA rules states that, except for the expenses of witnesses called by either party, "*[a]ll other expenses of the arbitration, including required travel and other expenses of the arbitrator, AAA representatives, and any witness and the cost of any proof produced at the direct request of the arbitrator, shall be borne equally by the parties*, unless they agree otherwise or unless the arbitrator in the award assesses such expenses or any part thereof against any specified party or parties." (Italics added.)

This case is thus distinguishable from *Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1246 (*Baltazar*), cited by appellant, in which our

18

Supreme Court addressed an employee's claim that the procedural unconscionability of the arbitration agreement she was required to sign was increased by the fact that the employer did not provide her "with a copy of the AAA's rules for arbitration of employment disputes, which, by the terms of the arbitration agreement, govern[ed] any arbitration between the parties." The court rejected the employee's reliance on several Court of Appeal cases, explaining that those cases "stand for the proposition that courts will more closely scrutinize the substantive unconscionability of terms that were 'artfully hidden' by the simple expedient of incorporating them by reference rather than including them in or attaching them to the arbitration agreement. [Citation.] [The employee's] argument accordingly might have more force if her unconscionability challenge concerned some element of the AAA rules of which she had been unaware when she signed the agreement. But her challenge to the enforcement of the agreement has nothing to do with the AAA rules; her challenge concerns only matters that were clearly delineated in the agreement she signed." (*Ibid.*)

Here, unlike the employee in *Baltazar*, respondents' unconscionability challenge *does* "concern[] some element of the AAA rules of which [they] had been unaware when [they] signed the agreement." (*Baltazar*, *supra*, 62 Cal.4th at p. 1246.) One of their claims of substantive unconscionability relates to the requirement that they bear half the costs of arbitration, which was *not* included anywhere in the arbitration provision. (See pt. II.C., *post*.) Rather it was " 'artfully hidden' " by appellant's incorporation by reference of the AAA rules, which were neither delineated in the Agreements respondents signed nor otherwise provided to them. (*Baltazar*, at p. 1246.) This fact exacerbated the procedural unconscionability of the arbitration provision by adding an element of surprise to the already oppressive circumstances of its

19

formation, requiring "closer scrutiny of its overall fairness." (*OTO*, *supra*, 8 Cal.5th at p. 126.)

In sum, because neither the arbitration provision nor the manner of its presentation to Ali and Bland "promote[d] voluntary or informed agreement to its terms," the evidence indicates, at the very least, a moderate degree of procedural unconscionability. (*OTO*, *supra*, 8 Cal.5th at p. 129.)

## C.  *Substantive Unconscionability*

"Substantive unconscionability examines the fairness of a contract's terms.  This analysis 'ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as " ' "overly harsh" ' " [citation], " 'unduly oppressive' "  [citation], " 'so one-sided as to "shock the conscience" ' " [citation], or "unfairly one-sided" [citation].) All of these formulations point to the central idea that the unconscionability doctrine is concerned not with "a simple old-fashioned bad bargain" [citation], but with terms that are "unreasonably favorable to the more powerful party." ' [Citation.]  Unconscionable terms ' "impair the integrity of the bargaining process or otherwise contravene the public interest or public policy" ' or attempt to impermissibly alter fundamental legal duties. [Citation.] . . .

"Substantive terms that, in the abstract, might not support an unconscionability finding take on greater weight when imposed by a procedure that is demonstrably oppressive.  Although procedural unconscionability alone does not invalidate a contract, its existence requires courts to closely scrutinize the substantive terms 'to ensure they are not manifestly unfair or one-sided.' [Citation.]" (*OTO*, *supra*, 8 Cal.5th at pp. 129–130.)

Here, the trial court concluded there were three substantively unconscionable terms in the arbitration provision. First, it found that the Agreement "has a 120 day statute of limitations. This is substantially shorter than the statutory limits and is unconscionable. [Citation.]" Second, the Agreement "permits [appellant] to seek a provisional remedy from the court but precludes plaintiffs from equivalent access. This is one sided and supports a finding of unconscionability. [Citation.]" Third, the Agreement "also requires that [respondents and appellant] split the cost of arbitration. This is unconscionable because a cost greater than the filing fees associated with litigation deters claims."

We agree with the trial court that these three terms are substantively unconscionable.

First, with respect to the shortened statute of limitations, most of the statutory Labor Code claims in respondents' complaint have at least a three-year statute of limitations. (See *Pinela v. Neiman Marcus Group, Inc.* (2015) 238 Cal.App.4th 227, 254 (*Pinela*).) The claims under the Business and Professions Code have a four-year statute of limitations. (See Bus. & Prof. Code, § 17208.) The arbitration provision shortens these statutes of limitations, stating: "A written demand for arbitration must be filed with the AAA and a copy of the filing provided to the other party within one hundred twenty (120) days of the occurrence of the claimed breach or other event giving rise to the controversy or claim. Failure to make such timely demand for arbitration shall constitute an absolute bar to the institution of any proceedings and a waiver of the claim." (Agreement, § VI., cl. 6.02(a).)

"California courts have held that, in the context of statutory claims such as the wage-and-hour claims brought by [respondents], a provision in an arbitration agreement shortening the statutory limitations period is

21

substantively unconscionable. 'The Labor Code . . . affords employees three or four years to assert [wage-and-hour claims]. [Citations.] Where, as in this case, arbitration provisions undermine statutory protections, courts have readily found unconscionability.' [Citations.]" (*Pinela, supra*, 238 Cal.App.4th at p. 254; accord, *Samaniego v. Empire Today LLC* (2012) 205 Cal.App.4th 1138, 1147 (*Samaniego*); *Nyulassy v. Lockheed Martin Corp.* (2004) 120 Cal.App.4th 1267, 1283.)[5]

Considering the applicable law and the circumstances of this case, we conclude the language in the arbitration provision significantly shortening the statute of limitations is substantively unconscionable. (See *Pinela, supra*, 238 Cal.App.4th at p. 254.)

Second, with respect to the requirement that respondents bear half the costs of arbitration, as noted earlier, this AAA rule was not included in the arbitration provision or attached to the Agreement even though the provision required that any arbitration proceedings be governed by AAA rules, which we have found is procedurally unconscionable. (See pt. II.B., *ante*; see also Agreement, § VI., cl. 6.02; AAA Rules, rule 54.) This rule is also *substantively* unconscionable under applicable California law because "[a]n arbitration procedure may not impose such costs or risks on wage claimants that it

---

[5] Appellant asserts that the shortened limitations period in this case was not substantively unconscionable because, "*outside the employment context*, 'California courts have permitted contracting parties to modify the length of the otherwise applicable California statute of limitations, whether the contract has extended or shortened the limitations period.' [Citation.]" (Quoting *Hambrecht & Quist Venture Partners v. American Medical International, Inc.* (1995) 38 Cal.App.4th 1532, 1548, italics added.) We have already found, however, that in the circumstances of this case the relationship between the parties "was characterized by a power imbalance analogous to that of an employer-employee relationship" and the arbitration provision, therefore, is subject to the *Armendariz* requirements. (*Ramos, supra*, 28 Cal.App.5th at pp. 1057–1058; see pt. II.A., *ante*.)

' "effectively blocks every forum for the redress of disputes, including arbitration itself." ' [Citation.] [¶] . . . . [*Armendariz*] requires that employers bear most arbitration costs, which, because they include the arbitrator's compensation, can be substantial. The *Armendariz* rule mitigates the unfairness of expecting that employees bear costs of a procedure to which they were required to agree." (*OTO*, *supra*, 8 Cal.5th at pp. 134–135;[6] see also *Armendariz*, *supra*, 24 Cal.4th at pp. 110–111 ["consistent with the majority of jurisdictions to consider this issue, we conclude that when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court"]; *Subcontracting Concepts*, *supra*, 34 Cal.App.5th at p. 212, [finding substantively unconscionable an arbitration provision's requirement that plaintiff claiming misclassification as an independent contractor bear his own arbitration costs].)

Third, the clause in the arbitration provision purporting to allow only appellant to request a provisional remedy in court provides: "As to any dispute or controversy which under the terms of this Agreement is a proper subject of arbitration, no suit at law or in equity based on such dispute or controversy shall be instituted by either party other than a suit to conform, enforce, vacate, modify or correct the award of the arbitrator(s) as provided by law; *provided, however, that this clause shall not limit Company's right to*

---

[6] The *OTO* court noted that section 1284.2 "states a default rule that, unless the agreement specifies otherwise, parties to an arbitration will bear their own expenses. However, *Armendariz* created an exception to this general rule for arbitrations of employment-related disputes." (*OTO*, *supra*, 8 Cal.5th at p. 128.)

*obtain any provisional remedy including, without limitation, injunctive relief, writ for recovery of possession or similar relief from any court of competent jurisdiction as may be necessary in Company's sole subjective judgment to protect its property rights.*"  (Agreement, § VI., cl. 6.02(c), italics added.)

Appellant maintains that the trial court "misread" this clause because, "[w]hile [the challenged] language does permit [appellant] to seek a provisional remedy in court, nothing about it *precludes* [respondents] from doing the same; the clause is simply silent on that issue.  In fact, [respondents] are permitted to seek a provisional remedy in court, notwithstanding the agreement to arbitrate, because . . . section 1281.8(b) guarantees *both* parties that right[.]"

Section 1281.8, subdivision (b) provides in relevant part:  "A party to an arbitration agreement may file in the court in the county in which an arbitration proceeding is pending, or if an arbitration proceeding has not commenced, in any proper court, an application for a provisional remedy in connection with an arbitrable controversy, but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without provisional relief."

We find that clause 6.02(c) is misleading in that it states that the exception to arbitrability for provisional remedies applies *only* to appellant. This reflects an attempt to improperly insert a unilateral carve out in the arbitration provision that favors appellant, which demonstrates substantive unconscionability.  (See *Armendariz*, *supra*, 24 Cal.4th at p. 117; compare *Baltazar*, *supra*, 62 Cal.4th at p. 1241 [clause in arbitration agreement that authorized *both* parties to seek preliminary injunctive relief in trial court "does no more than restate existing law (see . . . § 1281.8, subd. (b) . . . ), [and therefore] does not render the agreement unconscionable"].)

24

In addition, appellant is incorrect that "[t]he language of [clause] 6.02(c) merely reiterates what . . . section 1281.8(b) already provides," and is therefore not unconscionable. Clause 6.02(c) does not limit appellant's ability to seek provisional remedies to arbitration-related issues, which is the sole context to which section 1281.8 applies. (See § 1281.8, subd. (b) [parties to an arbitration agreement may file in trial court "an application for a provisional remedy in connection with an arbitrable controversy, but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without provisional relief"].) Instead, the clause gives appellant the right to obtain in court *any* provisional remedy, "without limitation," whenever it believes in its "sole subjective judgment" that such action is necessary "to protect its property rights," despite the arbitration provision's requirement that the parties otherwise arbitrate all claims. (Agreement, § VI., cl. 6.02(c).)

Thus, because the clause purports to permit appellant alone to seek redress in court, because the rights given to appellant in clause 6.02(c) of the arbitration provision go beyond the bilateral rights provided by section 1281.8 to parties involved in the arbitration process, and because appellant has provided no reasonable justification for such a one-sided carve out, this clause is substantively unconscionable. (See *Armendariz, supra,* 24 Cal.4th at p. 117 ["it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee, without at least some reasonable justification for such one-sidedness based on 'business realities' "]; accord, *Carbajal, supra,* 245 Cal.App.4th at p. 248; *Carmona v. Lincoln Millennium Car Wash, Inc.* (2014) 226 Cal.App.4th 74, 86.)

## D. *Severability*

Appellant contends that even assuming the arbitration provision contained unconscionable terms, the trial court improperly refused to sever those provisions and enforce the contract.

Civil Code section 1670.5, subdivision (a) provides: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."

We review the trial court's refusal to sever the unconscionable terms for abuse of discretion. (*Armendariz, supra*, 24 Cal.4th at p. 122.) "The overarching inquiry is whether ' "the interests of justice . . . would be furthered" ' by severance. [Citation.]" (*Id.* at p. 124.)

"In *Armendariz*, the court identified three factors relevant to whether severance is appropriate. First, '[i]f the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced.' (*Armendariz, supra*, 24 Cal.4th at p. 124.) Second, the fact that an 'arbitration agreement contains more than one unlawful provision' may 'indicate a systematic effort to impose arbitration on an employee . . . as an inferior forum that works to the employer's advantage' and may justify a conclusion 'that the arbitration agreement is permeated by an unlawful purpose.' (*Ibid*.) Third, if 'there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement,' the court would have to 'reform the contract, not through severance or restriction, but by augmenting it with additional terms,' which would exceed its power to cure a contract's illegality. (*Id.* at pp. 124–125.)" (*Subcontracting Concepts*,

26

*supra*, 34 Cal.App.5th at pp. 215–216; accord, *Samaniego, supra*, 205 Cal.App.4th at p. 1149.)

" 'The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement.' [Citation.]" (*OTO, supra,* 8 Cal.5th at p. 126.) Here, we have found at least a moderate level of procedural unconscionability, with circumstances surrounding the formation of this contract of adhesion demonstrating both oppression and surprise, and three substantively unconscionable terms that unfairly favor appellant in various ways. These circumstances plainly justify a finding that " 'the central purpose of the contract is tainted with illegality,' " that the multiple unlawful provisions " 'indicate a systematic effort to impose arbitration [on respondents] as an inferior forum that works to [appellant's] advantage,' " and that, " 'there is no single provision [the court could] strike or restrict in order to remove the unconscionable taint from the agreement.' " (*Subcontracting Concepts, supra,* 34 Cal.App.5th at p. 215, quoting *Armendariz, supra,* 24 Cal.4th at pp. 124, 125.)[7]

For these reasons, we conclude the trial court did not abuse its discretion when it determined that the terms of the arbitration provision were "sufficiently unfair" that enforcement should be withheld. (*OTO, supra,* 8 Cal.5th at p. 126; see also *Davis v. Kozak* (2020) 53 Cal.App.5th 897, 918

---

[7] Moreover, even assuming it *would* be possible, as appellant argues, to strike the substantively unconscionable terms, without having to rewrite or augment the terms of the arbitration provision, we would still find the trial court acted within its discretion when it refused to enforce the contract. That is because, as discussed in detail, *ante*, the totality of the circumstances support the determination that the interests of justice would *not* be served by severance, which is the "overarching inquiry" in deciding whether to enforce an unconscionable contract. (*Armendariz, supra*, 24 Cal.4th at p. 124.)

[where two substantively unconscionable provisions worked to employer's "distinct advantage," and indicated employer's "self-interested effort to impose an inferior forum on its employees, the trial court was within its discretion to conclude the agreement was permeated by unconscionability and should not be enforced"]; *Carbajal*, *supra*, 245 Cal.App.4th at p. 254 [where arbitration agreement contained three substantively unconscionable terms, trial court did not abuse its discretion when it refused to enforce agreement because it was "permeated with unconscionability"]; *Samaniego*, *supra*, 205 Cal.App.4th at pp. 1147–1148, 1149 [where arbitration agreement contained three substantively unconscionable terms, trial court could reasonably conclude "that severance would not serve the interests of justice"].)

In light of our conclusion that the trial court did not abuse its discretion when it found the arbitration provision unenforceable based on one of the "generally applicable contract defenses," i.e., unconscionability (*Concepcion*, *supra*, 563 U.S. at p. 339; see 9 U.S.C. § 2), we need not resolve the question of whether respondents are transportation workers engaged in interstate commerce and therefore exempt from the FAA. (See *OTO*, *supra*, 8 Cal.5th at p. 125; 9 U.S.C. § 1.)

## DISPOSITION

The trial court's order denying appellant's motion to compel arbitration and stay the underlying action is affirmed. Costs on appeal are awarded to respondents Sabid Ali and Eric Bland.

28

_____

Kline, P.J.

We concur:

_____

Richman, J.

_____

Miller, J.

*Ali et al. v. Daylight Transport, LLC* (A157104)

**CERTIFIED FOR PARTIAL PUBLICATION*** 

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SABID ALI et al.,<br>      Plaintiffs and Respondents,<br>v.<br>DAYLIGHT TRANSPORT, LLC,<br>      Defendant and Appellant. | A157104<br><br>(Alameda County Super. Ct.<br>No. RG18915217)<br><br>**ORDER CERTIFYING OPNION<br>FOR PARTIAL PUBLICATION** |

**THE COURT:**

The opinion in the above-entitled matter filed on December 4, 2020, was not certified for publication in the Official Reports. For good cause, the requests for publication are granted.


Dated: _____          _____

                                                    Kline, P.J.

---

\* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part I.

1

| | |
|---|---|
| Trial Court: | Alameda County Superior Court |
| Trial Judge: | Hon. Winifred Y. Smith |
| Attorneys for Appellant: | Ogletree, Deakins, Nash, Smoak & Stewart<br>Robert R. Roginson<br>Christopher W. Decker<br>Julia A. Luster |
| Attorneys for Respondents: | Leonard Carder Law Office<br>Aaron D. Kaufmann<br>David P. Pogrel<br>Elizabeth R. Gropman<br>Sarah B. Tosdal |
| Attorneys for Amicus Curiae<br>on behalf of Respondents: | Gupta Wessler<br>Jennifer D. Bennett<br><br>Public Justice<br>Karla A. Gilbride |