[No. A132297. First Dist., Div. Three. Apr. 5, 2012.]

SALOME SAMANIEGO et al., Plaintiffs and Respondents, v.
EMPIRE TODAY, LLC, Defendant and Appellant.

COUNSEL

Jones Day, Elwood Lui, Catherine S. Nasser, Lawrence C. DiNardo and Brian J. Murray for Defendant and Appellant.

Legal Aid Society-Employment Law Center, William C. McNeill III, Jinny Kim; Hinton Alfert Summer & Kaufman, Leonard Carder, Aaron Kaufmann and David P. Pogrel for Plaintiffs and Respondents.

OPINION

**SIGGINS, J.**—Empire Today, LLC (Empire), a national carpet and flooring business, appeals from the superior court's refusal to compel contractual arbitration of claims by carpet installers that Empire violated multiple provisions of the Labor Code. The court found the arbitration provision was unconscionable under California law. We affirm. We hold the provision is unconscionable and unenforceable under *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 [99 Cal.Rptr.2d 745, 6 P.3d 669] (*Armendariz*); that our consideration of the issues is governed by California law; and that the recent decision of the Supreme Court of the United States in *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. ___ [179 L.Ed.2d 742,

131 S.Ct. 1740] (*Concepcion*) does not change our analysis. We also hold the trial court did not abuse its discretion when it declined to sever the unconscionable contract provisions in order to otherwise enforce the arbitration clause or when it rejected Empire's late-filed reply declarations.

## BACKGROUND

Plaintiffs Salome Samaniego and Juventino Garcia work or worked as carpet installers for Flooring Install, Inc., an alleged subsidiary or affiliate of Empire.[1] When they were initially hired, and again later during their employment, plaintiffs were given form contracts and told to sign them if they wanted to work for Empire. The second contract (the Agreement), which is at issue here, was captioned "Flooring Install, Inc. Subcontractor Installer Agreement." Both contracts were presented only in English, although Garcia cannot read English and Samaniego has difficulty reading more than simple written English. The contracts were offered on a nonnegotiable, take-it or leave-it basis, with little or no time for review.

The Agreement is 11 single-spaced pages of small-font print riddled with complex legal terminology. The arbitration provision is set forth in the 36th of 37 sections. It provides: "Any dispute or claim arising from any provision of this Agreement or relating in any way to the business relationship between Flooring Install and the Subcontractor shall be submitted to arbitration before a single arbitrator pursuant to the Commercial Arbitration Rules of the American Arbitration Association. . . . [¶] **Both Flooring Install and the Subcontractor are hereby agreeing to choose arbitration, rather than litigation or some other means of dispute resolution, to address their grievances or alleged grievances with the expectation that this resolution process may be more cost-effective and expedient for the parties than litigation. By entering into this Agreement and the arbitration provisions of this section, both parties are giving up their constitutional right to have any dispute decided in a court of law before a jury and, instead, are accepting the use of arbitration, other than as set forth immediately below. [¶] DUE TO THE POSSIBLE IMMEDIATE AND IRREPARABLE NATURE OF THE HARM, THE PARTIES AGREE THAT THIS SECTION SHALL NOT APPLY TO ANY CLAIMS BROUGHT BY ANY PARTY FOR DECLARATORY OR PRELIMINARY INJUNCTIVE RELIEF INVOLVING** [specified sections] **OF THIS AGREEMENT.**"

---

[1] Empire identifies Flooring Install as a subcontractor of an entity it calls "Empire Carpets California Limited," but cites no evidence to that effect or of its own relationship with Empire Carpets California Limited. For clarity, and because the relationship between these entities is irrelevant to the issues addressed herein, we will refer to Empire and Flooring Install, Inc., jointly as Empire.

The Agreement also includes a shortened six-month statute of limitations for subcontractors to sue under the Agreement[2] and a unilateral fee-shifting provision that requires them to pay any attorneys' fees Empire might incur "to enforce any of its rights hereunder or to collect any amounts due." Although the Agreement directs that arbitration will be governed by the commercial rules of the American Arbitration Association, those rules were not attached to it or otherwise provided to plaintiffs.

Samaniego and Garcia filed this putative class action challenging Empire's allegedly unlawful misclassification of its carpet installers as independent contractors. The complaint alleges numerous Labor Code violations, including that Empire failed to pay minimum wage and overtime compensation; refused to indemnify employees for job-related expenses; wrongfully deducted from employee pay; coerced employees to make purchases from the company; failed to provide required meal periods; and failed to pay all wages due upon installers' termination.

Empire moved to stay the action and compel arbitration pursuant to the Agreement.[3] The court found the Agreement was "highly unconscionable from a procedural standpoint" and demonstrated "strong indicia of substantive unconscionability," and therefore denied Empire's motion to compel. It also denied Empire's request for reconsideration in light of the United States Supreme Court's decision in *Concepcion, supra*, 563 U.S. ___ [131 S.Ct. 1740], which was issued several weeks after the denial of Empire's motion. Empire timely appealed.

## DISCUSSION

### I. The Trial Court Correctly Refused to Compel Arbitration

The primary questions presented for our consideration are (1) whether the agreement to arbitrate is unconscionable and, therefore, unenforceable under California law; (2) whether the court properly declined to enforce the entire

---

[2] "37. THE SUBCONTRACTOR AGREES THAT IT WILL NOT COMMENCE ANY ACTION OR SUIT RELATING TO MATTERS ARISING OUT OF THIS AGREEMENT OR ITS RELATIONSHIP WITH FLOORING INSTALL LATER THAN SIX (6) MONTHS AFTER THE FIRST TO OCCUR OF (A) THE DATE SUCH CLAIM INITIALLY ARISES, OR (B) THE DATE THIS AGREEMENT TERMINATES FOR ANY REASON WHATSOEVER. THE SUBCONTRACTOR EXPRESSLY WAIVES ANY STATUTE OF LIMITATION TO THE CONTRARY."

[3] It also moved to dismiss for improper venue and for a stay pending the resolution of a related federal lawsuit, but it does not challenge the court's denial of those requests in this appeal.

arbitration clause rather than sever unconscionable provisions; and (3) whether the court correctly applied California law despite an Illinois choice-of-law provision in the Agreement. We answer each of these questions in the affirmative.

## A. Standards of Review

On appeal from the denial of a motion to compel arbitration, "[u]nconscionability findings are reviewed de novo if they are based on declarations that raise 'no meaningful factual disputes.' [Citation.] However, where an unconscionability determination 'is based upon the trial court's resolution of conflicts in the evidence, or on the factual inferences which may be drawn therefrom, we consider the evidence in the light most favorable to the court's determination and review those aspects of the determination for substantial evidence.' [Citation.] The ruling on severance is reviewed for abuse of discretion." (*Murphy v. Check 'N Go of California, Inc.* (2007) 156 Cal.App.4th 138, 144 [67 Cal.Rptr.3d 120] (*Murphy*); see *Armendariz, supra,* 24 Cal.4th at p. 122.) In keeping with California's strong public policy in favor of arbitration, any doubts regarding the validity of an arbitration agreement are resolved in favor of arbitration. (*Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 686 [99 Cal.Rptr.2d 809]; see *Armendariz, supra,* at p. 97.)

We review the court's choice-of-law determination de novo to the extent it presents a purely legal question, but review any underlying factual determinations for substantial evidence. (*Hambrecht & Quist Venture Partners v. American Medical Internat., Inc.* (1995) 38 Cal.App.4th 1532, 1539, fn. 4 [46 Cal.Rptr.2d 33]; see *Davies Machinery Co. v. Pine Mountain Club, Inc.* (1974) 39 Cal.App.3d 18, 23–24 [113 Cal.Rptr. 784].)

## B. Unconscionability

■ California law on unconscionability is well established. " ' "[U]nconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." [Citation.] Phrased another way, unconscionability has both a "procedural" and a "substantive" element.' [Citation.] ' "The procedural element requires oppression or surprise. [Citation.] Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is

hidden within a prolix printed form. [Citation.] The substantive element concerns whether a contractual provision reallocates risks in an objectively unreasonable or unexpected manner." [Citation.] Under this approach, both the procedural and substantive elements must be met before a contract or term will be deemed unconscionable. Both, however, need not be present to the same degree. A sliding scale is applied so that "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." ' [Citations.]" (*Lhotka v. Geographic Expeditions, Inc.* (2010) 181 Cal.App.4th 816, 821 [104 Cal.Rptr.3d 844] (*Lhotka*); see *Armendariz, supra,* 24 Cal.4th at p. 114.)

### 1. Procedural Unconscionability

Empire stakes its position that the Agreement was not procedurally unconscionable primarily on *Roman v. Superior Court* (2009) 172 Cal.App.4th 1462 [92 Cal.Rptr.3d 153] (*Roman*), which also addressed an employment contract. The plaintiff, a receptionist, argued the arbitration clause in her employment application was unconscionable solely because it was part of an adhesion contract. (*Id.* at pp. 1470–1471.) The trial court found the degree of procedural unfairness was minimal. (*Ibid.*) "The arbitration provision was not buried in a lengthy employment agreement. Rather, it was contained on the last page of a seven-page employment application, underneath the heading 'Please Read Carefully, Initial Each Paragraph and Sign Below.' It was set forth in a separate, succinct (four-sentence) paragraph that Roman initialed, affirming she had seen it." (*Id.* at p. 1471.) This minimal measure of procedural unconscionability, unaccompanied (the court went on to find) by *any* measure of substantive unconscionability, was not enough to render the arbitration agreement unconscionable. (*Id.* at pp. 1471–1476, 1466.)

*Roman* has little bearing on the issues in this case. Here, based on properly admitted, uncontroverted evidence, the superior court found as follows. "After being hired but before starting work, both Plaintiffs were required to take computer tests and complete certain paperwork, including a subcontractor agreement. They were told that they were 'required' to sign these documents, including the agreement, if they wanted to work for Empire. [Citations.] Both Plaintiffs are not able to read English (at all, or sufficiently well) and both Plaintiffs asked for a Spanish translation of the documents (including the agreement) in Spanish [*sic*] but were told none were available. [Citation.] Plaintiffs both signed all of the paperwork as instructed, but were not provided a copy." Plaintiffs were later presented with new agreements, also in English only, "and told that they were required to sign it if they wanted to keep working. [Citation.] Mr. Samaniego was directed to sign it immediately, and was told that he could not take it home for review.

[Citation.] Mr. Garcia was permitted 24 hours to review and return his agreement, signed, which he did." In short, "[p]laintiffs perform manual labor, do not speak English as a first language, have limited or no literacy in English, and were told they could not continue employment if they did not sign the agreements."

■ Moreover, Empire failed to provide plaintiffs with a copy of the relevant arbitration rules. This is significant. In *Harper v. Ultimo* (2003) 113 Cal.App.4th 1402, 1406 [7 Cal.Rptr.3d 418], the court held it was oppressive to reference the Better Business Bureau arbitration rules, but not attach the rules to the agreement. "The customer is forced to go to another source to find out the full import of what he or she is about to sign-and must go to that effort *prior* to signing." (*Ibid.*) "Numerous cases have held that the failure to provide a copy of the arbitration rules to which the employee would be bound supported a finding of procedural unconscionability. [Citations.]" (*Trivedi v. Curexo Technology Corp.* (2010) 189 Cal.App.4th 387, 393 [116 Cal.Rptr.3d 804].)

The Agreement was comprised of 11 pages of densely worded, single-spaced text printed in small typeface. The arbitration clause is the penultimate of 37 sections which, in contrast to *Roman*, were neither flagged by individual headings nor required to be initialed by the subcontractor. (See *Roman, supra,* 172 Cal.App.4th at pp. 1470–1471; see also *Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 89 [7 Cal.Rptr.3d 267] [arbitration clause inconspicuous, printed in eight-point typeface on the opposite side of the signature page; buyer not told the lease contained an arbitration clause or required to initial it].) Taken together, these factors amply support the trial court's finding that the Agreement was procedurally unconscionable.

■ Empire does not argue that these findings are unsupported by substantial evidence. Nor did it introduce any contrary evidence in the trial court. It attempted to file reply declarations purportedly challenging the truthfulness of plaintiffs' declarations *on the date of the hearing,* but it provided no plausible explanation for its tardiness and the court acted within its discretion when it denied leave to file them. (See Cal. Rules of Court, rule 3.1300(d) [court has discretion not to consider late-filed papers]; *Shadle v. City of Corona* (1979) 96 Cal.App.3d 173, 178–179 [157 Cal.Rptr. 624].) "The requirement that opposing papers be filed a reasonable time in advance of the hearing helps to ensure that the court and the parties will be familiar with the facts and the issues so that meaningful argument can take place and an informed decision rendered at the earliest convenient time." (96 Cal.App.3d at pp. 178–179.)[4]

---

[4] Although Empire says it did not file these declarations with its reply brief in order to avoid making a general appearance in this state, the explanation is hard to square with the fact that it

## 2. Substantive Unconscionability

■ The Agreement also demonstrates "strong indicia of substantive unconscionability," as the trial court found. " 'Substantive unconscionability focuses on the one-sidedness or overly harsh effect of the contract term or clause.' " (*Lhotka, supra*, 181 Cal.App.4th at pp. 824–825.) Empire asserts that none of the contractual terms amount to substantive unconscionability. But it supports its argument only with authority for the general proposition that a contractual provision that unilaterally shortens a limitations period to six months, taken alone, does not necessarily render an adhesion contract substantively unconscionable. (See *Soltani v. Western & So. Life Ins. Co.* (9th Cir. 2001) 258 F.3d 1038, 1043 [citing Cal. cases].) The import of such a clause is quite different in the context of the statutory wage and hour claims asserted here. The Labor Code provides the bases for the class claims, and it affords employees three or four years to assert them. (See *Nyulassy v. Lockheed Martin Corp.* (2004) 120 Cal.App.4th 1267, 1283 [16 Cal.Rptr.3d 296]; *Martinez v. Master Protection Corp.* (2004) 118 Cal.App.4th 107, 117 [12 Cal.Rptr.3d 663].) ■ Where, as in this case, arbitration provisions undermine statutory protections, courts have readily found unconscionability. (*Nyulassy, supra*, at p. 1283; *Martinez, supra*, at p. 117; *Wherry v. Award, Inc.* (2011) 192 Cal.App.4th 1242, 1249 [123 Cal.Rptr.3d 1] (*Wherry*).) As noted in *Armendariz*, "an arbitration agreement cannot be made to serve as a vehicle for the waiver of statutory rights created by the FEHA." (*Armendariz, supra*, 24 Cal.4th at p. 101.)

■ In any event, the limitations period is just one of several one-sided provisions. The Agreement also requires plaintiffs to pay any attorneys' fees incurred by Empire, but imposes no reciprocal obligation on Empire. Again, such a clause contributes to a finding of unconscionability. (See *Wherry, supra*, 192 Cal.App.4th at pp. 1248–1249.) Empire argues this clause is of no moment because, after all, one-way fee-shifting provisions that benefit only employers violate both the Labor Code and commercial arbitration rules, "which means that Empire cannot recover its attorney's fees from plaintiffs even if it prevails in arbitration." In other words, according to Empire, it is not unconscionable because it is illegal and, hence, unenforceable. To state the premise is to refute Empire's logic. The argument is unpersuasive.

■ In addition, the Agreement exempts from the arbitration requirement claims typically brought by employers—namely, those seeking declaratory and preliminary injunctive relief to protect Empire's proprietary informa-tion and noncompetition/nonsolicitation provisions—while restricting to arbi-tration any and all claims plaintiffs might bring. Empire notes in this regard

---

filed a timely declaration from its own counsel in support of its reply brief. Empire also does not explain how waiting until the day of the hearing to file its declarations would mitigate its general appearance problem.

that "not all lack of mutuality in an adhesive arbitration agreement is invalid." True enough. (Cf. *Flores v. Transamerica HomeFirst, Inc.* (2001) 93 Cal.App.4th 846, 855, 113 Cal.Rptr.2d 376.) But at issue here is whether the multiple one-sided provisions in the Agreement, considered together, support the trial court's finding that it exhibits strong indicia of substantive unconscionability. They do, and we therefore have no difficulty affirming the denial of Empire's motion to compel arbitration.

## II. California Law Applies

Empire asserts the enforceability of the arbitration clause is governed by Illinois, not California, law, pursuant to the Agreement's choice-of-law provision that says "[t]his Agreement shall be governed by, and construed in accordance with, the laws of Illinois and the parties agree jurisdiction and venue for any actions hereunder shall reside in Chicago, Illinois." Empire contends the trial court erred when it declined to enforce this clause and instead applied California law when it decided the motion to compel arbitration. We disagree.

 Empire relies on *Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459, 464–465 [11 Cal.Rptr.2d 330, 834 P.2d 1148] (*Nedlloyd*) to support its argument that the choice-of-law clause must be construed broadly to encompass plaintiffs' statutory wage and hour claims. *Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906 [103 Cal.Rptr.2d 320, 15 P.3d 1071] reveals why Empire's reliance on *Nedlloyd* misses the mark. There, the Supreme Court explained that "[u]nder *Nedlloyd*, which adopted the Restatement approach and found the enforceability of choice-of-law clauses closely related to that of forum-selection clauses [citation], the weaker party to an adhesion contract may seek to avoid enforcement of a choice-of-law provision therein by establishing that 'substantial injustice' would result from its enforcement [citation] or that superior power was unfairly used in imposing the contract [citation] [indicating that evidence of unfair use of bargaining power may defeat enforcement of a forum-selection clause contained in an adhesion contract]." (*Id.* at pp. 917–918, fn. omitted.) Thus, " '[a] choice-of-law provision, like any other contractual provision, will not be given effect if the consent of one of the parties to its inclusion in the contract was obtained by improper means, such as by misrepresentation, duress, or undue influence, or by mistake. Whether such consent was in fact obtained by improper means or by mistake will be determined by the forum in accordance with its own legal principles. . . . Choice-of-law provisions contained in [adhesion] contracts are usually respected. Nevertheless, the forum will scrutinize such contracts with care and will refuse to apply any choice-of-law provision they may contain if to do so would result in substantial injustice to the adherent.' " (*Id.* at p. 918, fn. 6, quoting Rest.2d Conflict of Laws, § 187, com. b, p. 562.)

Applying these principles, the same factors that render the arbitration provision unconscionable warrant the application of California law. As seen in our preceding discussion of procedural and substantive unconscionability, the Agreement was obtained by "improper means" (*Washington Mutual Bank v. Superior Court, supra*, 24 Cal.4th at p. 918, fn. 6) and, to the extent Illinois law might require enforcement of its arbitration clause,[5] enforcing Empire's choice-of-law provision would result in substantial injustice. The trial court correctly declined to apply it.

## III. Severability

Empire argues that, even if the "carve-out" from arbitration for injunctive and declaratory relief, shortened limitations period and fee-shifting provisions are unconscionable, the court abused its discretion when it declined to sever them and otherwise enforce arbitration. We disagree.

Preliminarily, plaintiffs have a creditable argument that Empire forfeited this claim because it never asked the trial court for severance. Empire does not claim it raised severance before the trial court. Instead, it claims we should overlook its failure because severance "is a question of law." It is not. When an arbitration agreement is "permeated" by unconscionability the decision whether to sever the objectionable clauses or refuse to compel arbitration is within the trial court's exercise of discretion. (*Armendariz, supra*, 24 Cal.4th at p. 122; *Lhotka, supra*, 181 Cal.App.4th at p. 826; *Murphy, supra*, 156 Cal.App.4th at p. 149.) Empire did not ask the trial court to exercise that discretion, so it cannot now complain the court's decision was erroneous.

In any event, the record here amply supports the ruling. "An arbitration agreement can be considered permeated by unconscionability if it 'contains more than one unlawful provision . . . . Such multiple defects indicate a systematic effort to impose arbitration . . . not simply as an alternative to litigation, but as an inferior forum that works to the [stronger party's] advantage.' [Citations.] 'The overarching inquiry is whether " 'the interests of justice . . . would be furthered' " by severance.' " (*Lhotka, supra*, 181 Cal.App.4th at p. 826.) On this record, the trial court could, and presumably did, make that inquiry and conclude, reasonably, that severance would not serve the interests of justice.

---

[5] We need not and do not make any determination whether Illinois law would, in fact, require arbitration in this case.

## IV. *Concepcion*

Finally, Empire contends the United States Supreme Court's recent decision in *Concepcion, supra*, 563 U.S. ___ [131 S.Ct. 1740], extends the Federal Arbitration Act (FAA; Feb. 12, 1925, ch. 213, 43 Stat. 883) so broadly as to preempt each "unconscionability-based rationale" that supported the trial court's refusal to compel arbitration here. Empire reads *Concepcion* too broadly.

In *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148 [30 Cal.Rptr.3d 76, 113 P.3d 1100] (*Discover Bank*), the California Supreme Court held that arbitration agreements in adhesive consumer contracts that forbid classwide arbitration are, as a general matter, unconscionable. It stated: "We do not hold that all class action waivers are necessarily unconscionable. But when the waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then, at least to the extent the obligation at issue is governed by California law, the waiver becomes in practice the exemption of the party 'from responsibility for [its] own fraud, or willful injury to the person or property of another.' " (*Id.* at pp. 162–163.) Under these circumstances, the court held such waivers are unconscionable and, therefore, unenforceable.

*Concepcion* addresses whether the FAA preempts the *Discover Bank* rule. (*Concepcion, supra*, 563 U.S. at p. ___ [131 S.Ct. at p. 1746].) The United States Supreme Court held that it does, because "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." (*Id.* at p. ___ [131 S.Ct. at p. 1748].) But at the same time as the court repudiated the categorical rule in *Discover Bank*, it explicitly reaffirmed that the FAA "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' [although] not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." (*Id.* at p. ___ [131 S.Ct. at p. 1746]; see 9 U.S.C. § 2; *Mission Viejo Emergency Medical Associates v. Beta Healthcare Group* (2011) 197 Cal.App.4th 1146, 1158, fn. 4 [128 Cal.Rptr.3d 330].) In short, arbitration agreements remain subject, post-*Concepcion*, to the unconscionability analysis employed by the trial court in this case.

## DISPOSITION

The order denying Empire's motion for a stay and to compel arbitration is affirmed.

McGuiness, P. J., and Jenkins, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 11, 2012, S202510. Cantil-Sakauye, C. J., did not participate therein.