Filed 6/11/24  Fredeen v. California Cemetery and Funeral Services CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| LISA FREDEEN et al.,<br><br>Plaintiffs and Respondents,<br><br>v.<br><br>CALIFORNIA CEMETERY AND FUNERAL SERVICES, LLC,<br><br>Defendant and Appellant. | B326031<br><br>(Los Angeles County<br>Super. Ct. No. BC706930) |

APPEAL from an order of the Superior Court of Los Angeles County. Kristin S. Escalante, Judge. Affirmed.

Stinson, Carrie M. Francis, and Lonnie J. Williams, Jr., for Defendant and Appellant.

Matern Law Group, Matthew J. Matern, Debra J. Tauger and Launa Adolph for Plaintiffs and Respondents.

———————————

1

Defendant and Appellant California Cemetery and Funeral Services, LLC (CCFS) appeals from an order denying its motion to compel arbitration of two of its former employees' individual claims under the Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.). The trial court found the arbitration agreement procedurally and substantively unconscionable, declined to sever the unconscionable terms, and ruled the agreement was unenforceable.

CCFS argues the trial court's moderate procedural unconscionability finding was based on the unsupported conclusion that the employees were subjected to economic pressure, and that CCFS did not explain the agreement. It also argues the trial court's substantive unconscionability finding was erroneous because it was based on speculation and not on the actual agreements between the parties. Last, CCFS argues the trial court should have severed the unconscionable terms, found the remainder of the agreement enforceable, and compelled the employees' claims to arbitration.

For the reasons stated below, we affirm.

## BACKGROUND

### I.     Plaintiffs' employment with CCFS and the arbitration agreements

Plaintiffs and Respondents Lisa Fredeen and Sarah Mitchum are CCFS's former employees. Fredeen worked for CCFS as a preplanning advisor from 2012 until mid-2017. Mitchum worked for CCFS as a family services counselor rookie from approximately November of 2017 to February of 2018.

During Fredeen's first week of employment, she attended onboarding training with other preplanning advisors. CCFS provided her with a large packet of documents to sign, including an arbitration agreement on a three-page preprinted form.

Fredeen signed each document, including the arbitration agreement, and understood her signature was required if she wanted to work for CCFS. At the start of her employment, Fredeen also signed an employment agreement with noncompetition and confidentiality restrictions.

Mitchum also completed onboarding training during her first week of employment. The onboarding process required her to watch online training videos from her desk computer while electronically signing documents. Mitchum completed the training alone from her desk and did not have the opportunity to ask questions regarding the various documents she signed. She believed she would be unable to progress with the online training if she did not sign each document. Mitchum signed the same arbitration agreement as Fredeen, however, unlike Fredeen, Mitchum did not sign an employment agreement with the noncompetition and confidentiality restrictions.

CCFS did not explain to either Fredeen or Mitchum they could review the arbitration agreement with an attorney or negotiate its terms.

## II.     Procedural history

Plaintiffs sued CCFS for PAGA violations. Plaintiffs sought civil penalties pursuant to Labor Code section 2699, subdivision (f), on behalf of all nonexempt CCFS employees for: (1) failure to provide meal breaks in violation of Labor Code sections 226.7 and 512; (2) failure to provide rest breaks in violation of Labor Code section 226.7; (3) failure to pay meal and rest break premiums as required by Labor Code section 226.7, subdivision (b); (4) failure to provide accurate itemized wage statements in violation of Labor Code section 226, subdivision (a);

3

and (5) failure to reimburse personal cell phone expenses in violation of Labor Code section 2802.

CCFS moved to compel Plaintiffs' claims to arbitration. Plaintiffs opposed on the grounds that the arbitration agreement was unenforceable because the agreement was unconscionable, and the unconscionable terms could not be severed from the agreement.

The trial court agreed with Plaintiffs and denied the motion. The trial court found a moderate degree of procedural unconscionability because the agreement was an adhesion contract; Plaintiffs lacked a meaningful choice and were subjected to economic pressure to sign the agreement; Plaintiffs were required to sign the agreement as a condition of their employment; CCFS presented Plaintiffs with many documents to sign without any explanation during the onboarding process; and CCFS did not encourage Plaintiffs to consult with an attorney or otherwise take time to review the documents.

The trial court also found that the agreement was substantively unconscionable. It found substantively unconscionable the arbitration agreement's exclusions clause, which excluded from arbitration any claims for breach of CCFS's confidentiality and noncompete agreements. The trial court noted the excluded claims were more likely to be brought by CCFS, which had not provided any business justification for the exclusions. Next, the trial court found substantively unconscionable the arbitration agreement's confidentiality clause, which could increase Plaintiffs' costs by preventing them from conducting informal discovery through interviews to develop evidence, and could discourage other employees from pursuing potential claims.

4

In denying CCFS's motion, the trial court found the agreement's lack of mutuality would require it to reform the agreement, and declined to exercise its discretion to sever the unconscionable terms.

CCFS appealed.

## DISCUSSION

CCFS argues the trial court should have compelled Fredeen and Mitchum to arbitration as the agreement was neither procedurally nor substantively unconscionable. To the extent any provisions were unconscionable, CCFS argues the trial court abused its discretion when it declined to sever those provisions and refused to enforce the agreement. We disagree.

## I. Governing law and standard of review

" 'A party to an arbitration agreement may petition the court to compel other parties to arbitrate a dispute that is covered by their agreement.' " (*Cohen v. TNP 2008 Participating Notes Program, LLC* (2019) 31 Cal.App.5th 840, 858.) "Although there is general policy favoring arbitration, a party cannot be compelled to accept arbitration of a controversy which they have not agreed to arbitrate." (*Garcia v. Expert Staffing West* (2021) 73 Cal.App.5th 408, 413.) "Whether an agreement to arbitrate exists is a threshold issue of contract formation and state contract law. [Citations.] The party seeking to compel arbitration bears the burden of proving the existence of a valid arbitration agreement." (*Avila v. Southern California Specialty Care, Inc.* (2018) 20 Cal.App.5th 835 843–844.)

A court may refuse to enforce an arbitration agreement if it finds as a matter of law that the agreement is unconscionable at the time it was made. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 98, 114

5

(*Armendariz*).)  In its discretion, " 'the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.' " (*Id*. at p. 114.)

"The general principles of unconscionability are well established.  A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party.  [Citation.]  Under this standard, the unconscionability doctrine ' "has both a procedural and a substantive element." ' [Citation.]  'The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power.  [Citations.]  Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided.' " (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125 (*OTO*).)

"Both procedural and substantive unconscionability must be shown for the defense to be established, but 'they need not be present in the same degree.'  [Citation.]  Instead, they are evaluated on ' "a sliding scale." '  [Citation.]  '[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to' conclude that the term is unenforceable.  [Citation.]  Conversely, the more deceptive or coercive the bargaining tactics employed, the less substantive unfairness is required.  [Citations.]  A contract's substantive fairness 'must be considered in light of any procedural unconscionability' in its making.  [Citation.]  'The ultimate issue in every case is whether the terms of the contract

6

are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement.' " (*OTO, supra,* 8 Cal.5th at pp. 125–126.) "The burden of proving unconscionability rests upon the party asserting it." (*Id.* at p. 126.)

Where the evidence is undisputed, we review the trial court's unconscionability finding de novo. (*OTO, supra,* 8 Cal.5th at p. 126.)

## II. Procedural unconscionability

"A procedural unconscionability analysis 'begins with an inquiry into whether the contract is one of adhesion.' [Citation.] An adhesive contract is standardized, generally on a preprinted form, and offered by the party with superior bargaining power 'on a take-it-or-leave-it basis.' [Citations.] Arbitration contracts imposed as a condition of employment are typically adhesive [citations], and the agreement here is no exception. The pertinent question, then, is whether circumstances of the contract's formation created such oppression or surprise that closer scrutiny of its overall fairness is required. [Citations.] ' " '*Oppression* occurs where a contract involves lack of negotiation and meaningful choice, *surprise* where the allegedly unconscionable provision is hidden within a prolix printed form.' " ' " (*OTO, supra,* 8 Cal.5th at p. 126, original italics.)

" 'The circumstances relevant to establishing oppression include, but are not limited to (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney.' [Citations.] With respect to *preemployment* arbitration contracts, we have observed

7

that 'the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement.' " (*OTO, supra*, 8 Cal.5th at pp. 126–127, original italics.)  In the "prehiring" setting, we must be " 'particularly attuned'  to the danger of oppression and overreaching." (*Id*. at p. 127.)

Here, we find the agreement has at least a modicum of procedural unconscionability.  First and foremost, as CCFS admits, the agreement was an adhesion contract presented to Plaintiffs on a take-it-or-leave-it basis during their onboarding process and as a condition of their employment.  (*Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 796.)  While the arbitration agreement was not particularly long or complex, additional circumstances supported a finding of procedural unconscionability.  Here, Plaintiffs were not advised that they could have an attorney review the agreement (*Swain v. LaserAway Medical Group, Inc.* (2020) 57 Cal.App.5th 59, 69 (*Swain*)), CCFS did not offer to explain the agreement to Plaintiffs (*Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 244 (*Carbajal*)), and CCFS presented the agreement during its onboarding process, which required Plaintiffs to sign each document to complete the process without giving them additional time to review the agreement (*Murrey v. Superior Court* (2023) 87 Cal.App.5th 1223, 1238 (*Murrey*)).

Given these circumstances, we find at least a low level of procedural unconscionability.

## III. Substantive unconscionability

"Substantive unconscionability examines the fairness of a contract's terms. This analysis 'ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as " ' "overly harsh" ' " [citation], " 'unduly oppressive' " [citation], " 'so one-sided as to "shock the conscience" ' " [citation], or "unfairly one-sided" [citation]. All of these formulations point to the central idea that the unconscionability doctrine is concerned not with "a simple old-fashioned bad bargain" [citation], but with terms that are "unreasonably favorable to the more powerful party." ' [Citation.] Unconscionable terms ' "impair the integrity of the bargaining process or otherwise contravene the public interest or public policy" ' or attempt to impermissibly alter fundamental legal duties." (*OTO*, *supra*, 8 Cal.5th at pp. 129–130.)

### A. Exclusions clause

Plaintiffs argue the exclusions clause is substantively unconscionable. We agree.

The exclusions clause excludes from arbitration any claims brought "to enforce any non-competition or confidentiality agreement which may exist between the parties."

"Substantively unconscionable terms may take various forms, but may generally be described as unfairly one-sided." (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1071.) "One such form . . . is the arbitration agreement's lack of a ' "modicum of bilaterality," ' wherein the employee's claims against the employer, but not the employer's claims against the employee, are subject to arbitration." (*Id*. at pp. 1071–1072.) One-sided provisions in adhesive contracts, like the one at issue here, are "a hallmark of substantive unconscionability." (*Swain*, *supra*,

9

57 Cal.App.5th at p. 73, citing *Armendariz, supra,* 24 Cal.4th at p. 118.) Indeed, a series of cases found similar exclusion clauses to be substantively unconscionable where the party with superior bargaining power has included a carve-out for claims it is more likely to bring against the weaker party while limiting the latter to arbitration. (See, e.g., *Davis v. Kozak* (2020) 53 Cal.App.5th 897, 916; *Swain, supra,* 57 Cal.App.5th at p. 72; *Ramirez v. Charter Communications, Inc.* (2022) 75 Cal.App.5th 365, 383; *Carbajal, supra,* 245 Cal.App.4th at p. 250; *Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702, 725 (*Fitz*); *Samaniego v. Empire Today, LLC* (2012) 205 Cal.App.4th 1138, 1147–1148 (*Samaniego*); *O'Hare v. Municipal Resource Consultants* (2003) 107 Cal.App.4th 267, 274.) And, while our Supreme Court has recognized that the party with the superior bargaining power may include certain carve-outs for legitimate business purposes (*Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1250 (*Baltazar*)), there is no indication that CCFS made any showing here.

CCFS argues the exclusions clause is not substantively unconscionable because it is irrelevant to the present dispute and the underlying noncompete agreement is unenforceable. We are not persuaded.

CCFS argues the exclusions clause is irrelevant as "there is no reason to believe that CCFS or Plaintiffs will assert claims to enforce any non-compete and confidentiality agreement between them or any reason to believe that the [agreement's] exclusion of those claims has any impact on this case." CCFS's argument is not persuasive because unconscionability is determined by evaluating the terms at the time the contract is made. (Civ. Code, §1670.5, subd. (a).)

10

Neither of the unpublished federal district court decisions cited by CCFS address the rule that unconscionability must be evaluated in the context of when the parties entered into the agreement. (Compare Civ. Code, § 1670.5, subd. (a) with *Steele v. American Mortg. Management Services* (E.D. Cal., Oct. 26, 2012, No. 2:12-CV-00085 WBS JFM) 2012 WL 5349511, at *8; *Marks v. Bridgestone Americas, Inc.* (C.D. Cal., Nov. 16, 2015, No. 2:15-CV-05153-CAS-RAO) 2015 WL 13919149, at *14.) Further, in both cases, the district court assumed without a factual basis that the parties seeking arbitration had a justifiable reason for the exclusion clauses. (*Steele v. American Mortg. Management Services*, at *8; *Marks v. Bridgestone Americas, Inc.*, at *14.) Here, CCFS has not offered any plausible justification for the exclusion.

Nor are we convinced by CCFS's argument that the exclusions clause is not substantively unconscionable because it is partially unenforceable as the noncompete agreement to which it purportedly applies is illegal and irrelevant. Again, we determine unconscionability at the time the contract was made and evaluate the harshness of the agreement's terms. (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 920.) Moreover, an illegal provision only adds to a contract's unconscionability, as the agreement subjects employees to provisions that the Legislature expressly outlawed. (See *Samaniego*, *supra*, 205 Cal.App.4th at p. 1147; *Bakersfield College v. California Community College Athletic Assn.* (2019) 41 Cal.App.5th 753, 767.)

Accordingly, we find the exclusions clause is substantively unconscionable.

## B.  Confidentiality clause

Plaintiffs also argue the arbitration agreement's confidentiality clause is unconscionable.  We agree.

The confidentiality clause states:  "The parties agree and acknowledge that any arbitration proceedings between them, and the outcome of such proceedings, shall be kept strictly confidential; provided however, that [CCFS] may disclose such information to the extent required by law and to its associates, agents and professional advisors who have a legitimate need to know such information, and the Associate may disclose such information (1) to the extent required by law, (2) to the extent that the Associate is required to disclose same to professional persons assisting Associate in preparing tax returns, and (3) to Associate's legal counsel."

Courts have recognized that confidentiality clauses in employment arbitration agreements can be problematic, because they can hinder the employee from engaging in informal discovery in pursuit of litigation.  (*Ramos v. Superior Court* (2018) 28 Cal.App.5th 1042, 1066; see also *Hasty v. American Automobile Assn. etc.* (2023) 98 Cal.App.5th 1041, 1062 (*Hasty*).)  Here, the confidentiality clause is sufficiently restrictive to impair Plaintiffs' ability to conduct informal discovery and investigate their respective claims.  Essentially, the confidentiality clause prohibits the Plaintiffs from disclosing anything about the arbitration to anyone except for their legal counsel, a tax preparer, and to the extent required by law.  Meanwhile, CCFS has expressly reserved the right to disclose the arbitration proceedings to its "associates, agents and professional advisors who have a legitimate need to know such information."  Thus, the confidentiality clause is unfairly one-sided in that it

12

allows CCFS to disclose the arbitration to virtually anyone involved with its business and the claim itself while Plaintiffs can disclose the proceeding to their legal counsel, their tax preparers, and anyone else that can compel the disclosure under the law. This overly restrictive confidentiality clause would certainly impair Plaintiffs' ability to develop their claims against CCFS.

We note, like the exclusions clause above, our Supreme Court has recognized "a confidentiality provision in an arbitration agreement is not per se unconscionable when it is based on a legitimate commercial need (such as to protect trade secrets or proprietary information)." (*Murrey*, *supra*, 87 Cal.App.5th at p. 1254, citing *Baltazar*, *supra*, 62 Cal.4th at p. 1250.) However, CCFS has offered no such justification beyond its status as a limited liability company and its need to disclose certain information to its agents to participate in the arbitration. This justification, however, does nothing to assuage our concerns that the strict confidentiality imposed on Plaintiffs would significantly impair their ability to conduct informal discovery or otherwise pursue their claims.

Nor are we convinced that the substantive unconscionability of the confidentiality clause has been lessened to the extent it allows Plaintiffs to disclose certain information to the extent required by law. First, the confidentiality clause's purported catch-all provision "does not save it because the employee would have no way of knowing what would be covered or not covered by this provision." (*Hasty*, *supra*, 98 Cal.App.5th at p. 1062.) Second, the language limits Plaintiffs to disclosures to those that are "required" by law rather than merely disclosures that are, for example, permitted by law. The language implies that the Plaintiffs may only disclose the arbitration proceedings

13

when they are compelled to do so. Thus, the confidentiality clause is still sufficiently restrictive to limit Plaintiffs' ability to investigate their claims and conduct informal discovery.

Moreover, for the reasons stated above, we also reject CCFS's argument that the confidentiality clause is not substantively unconscionable in the context of the specific claims here. The law is clear that we determine unconscionability at the time the agreement was made. (Civ. Code, § 1670.5, subd. (a).)

Accordingly, we find the confidentiality clause substantively unconscionable. Finally, for the reasons established above, we find that the record supports the conclusion that the agreement is substantively unconscionable to a high degree.

## IV. Severability

Because we agree with the trial court's finding that the arbitration agreement is both procedurally and substantively unconscionable, we turn to the issue of severance.

"Under Civil Code section 1670.5, subdivision (a), a trial court has discretion to ' "refuse to enforce the contract as a whole if it is permeated by the unconscionability, or it may strike any single clause or group of clauses which are so tainted or which are contrary to the essential purpose of the agreement, or it may simply limit unconscionable clauses so as to avoid unconscionable results." ' " (*Carbajal*, *supra*, 245 Cal.App.4th at p. 254, quoting *Armendariz*, *supra*, 24 Cal.4th at p. 122.)

"We review a trial court's order declining to sever the unconscionable provisions from an arbitration agreement for abuse of discretion. [Citation.] 'All exercises of discretion must be guided by applicable legal principles, however, which are derived from the statute under which discretion is conferred.

14

[Citations.] If the court's decision is influenced by an erroneous understanding of applicable law or reflects an unawareness of the full scope of its discretion, the court has not properly exercised its discretion under the law. [Citation.] Therefore, a discretionary order based on an application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion and is subject to reversal.' " (*Lange v. Monster Energy Co.* (2020) 46 Cal.App.5th 436, 453 (*Lange*).)

"The overarching inquiry is whether ' "the interests of justice . . . would be furthered" ' by severance." (*Armendariz, supra*, 24 Cal.4th at pp. 123–124.) An agreement may be "permeated with too high a degree of unconscionability for severance to rehabilitate." (*Lange, supra*, 46 Cal.App.5th at p. 455.) While there is no per se rule that more than one substantively unconscionable provision will result in an agreement that is permeated by unconscionability (*id.* at pp. 452–455), " ' "[a]n employment arbitration agreement can be considered permeated by unconscionability if it 'contains *more than one* unlawful provision' " ' " (*Carbajal, supra*, 245 Cal.App.4th at p. 254, original italics). "If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced. If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." (*Armendariz, supra*, 24 Cal.4th at p. 124.)

Here, we find the trial court did not abuse its discretion in declining to sever the offending provisions. As the trial court correctly acknowledged, an employment arbitration agreement with more than one unconscionable provision is disfavored and

" ' "can be considered permeated by unconscionability if it 'contains *more than one* unlawful provision.' " ' " (*Carbajal*, *supra*, 245 Cal.App.4th at p. 254.)  Moreover, we find the two offending clauses are central to the agreement and not merely collateral parts to the bargain.  Without any reasonable justification, the two offending clauses effectively impose arbitration on Plaintiffs while allowing CCFS to bring its claims in court, and severely impair Plaintiffs' ability to investigate their claims.  In addition, the exclusions clause also included an illegal provision, which made this offending clause even more problematic.

Lastly, we do not believe that the interests of justice would be served by severance here.  As the court in *Fitz* reasoned, to allow arbitration here would permit the employer to benefit from the unconscionable agreement it imposed on its employees.  (*Fitz*, *supra*, 118 Cal.App.4th at p. 727.)  "An employer will not be deterred from routinely inserting such a deliberately illegal clause into the arbitration agreements it mandates for its employees if it knows that the worst penalty for such illegality is the severance of the clause after the employee has litigated the matter.  In that sense, the enforcement of a form arbitration agreement containing such a clause drafted in bad faith would be condoning, or at least not discouraging, an illegal scheme, and severance would be disfavored unless it were for some other reason in the interests of justice." (*Armendariz, supra*, 24 Cal.4th at pp. 124–125, fn. 13.)

16

## DISPOSITION

The order denying Appellant's motion to compel arbitration is affirmed.  Respondents to recover costs on appeal.


VIRAMONTES, J.


I CONCUR:


STRATTON, P. J.

**GRIMES, J., Dissenting.**

Respectfully, I dissent and would reverse the order denying defendant's motion to compel arbitration of two plaintiffs' individual claims under the Private Attorneys General Act of 2004 (PAGA; Lab. Code, § 2698 et seq.). I agree with the majority that the arbitration agreement has a low degree of procedural unconscionability. In my view, the arbitration agreement also has a low degree of substantive unconscionability. In the context of this individual PAGA action, the arbitration confidentiality clause does not have any adverse consequences that might otherwise be found in an employment action for discrimination, harassment or retaliation. The exclusion from arbitration of claims involving noncompetition or confidentiality agreements likewise has little or no relevance in the context of the PAGA claims in this case. The contract is not permeated by an unlawful purpose, and the clauses plaintiffs challenge may be excised without any need to augment the agreement with additional terms. Consequently, I conclude the trial court abused its discretion when it refused to grant the motion to compel arbitration.

1.    **Substantive Unconscionability**

"Because the degree of procedural unconscionability is minimal, the agreement is unenforceable only if the degree of substantive unconscionability is high." (*Dotson v. Amgen, Inc.* (2010) 181 Cal.App.4th 975, 982.) I find the two challenged clauses in the arbitration agreement, in the circumstances of this case, exhibit a low degree of substantive unconscionability.

a.    **The exclusions clause**

The arbitration agreement contains a clause excluding from arbitration claims brought "to enforce any non-competition or

1

confidentiality agreement which may exist between the parties." The majority finds the agreement lacked mutuality because the excluded claims are more likely to be brought by the employer, while requiring the employee to arbitrate all her claims. However, here, the only claims in the case are individual PAGA claims. None of the parties has alleged any claim or defense that implicates either the noncompetition or the confidentiality clause.

There *is* no noncompete or confidentiality agreement in plaintiff Sara Mitchum's contract with defendant, and hence no potential claims for defendant to enforce against her. The trial court ignored this reality, finding it was "at least possible" that defendant could have required Ms. Mitchum to sign such an agreement "if she had advanced in the company." Nothing in the record supports that speculative conclusion. The exclusions clause is simply irrelevant to the arbitration of Ms. Mitchum's claim.

I do not see the exclusions clause as so unfair in plaintiff Lisa Fredeen's case as to justify withholding enforcement of the arbitration agreement. (See *OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125-126 (*OTO*) [" 'The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement.' "].) Here, the arbitration agreement is not wholly nonmutual. Defendant is obligated to arbitrate all disputes except those concerning the noncompetition and confidentiality agreement in Ms. Fredeen's contract. In this case, after years of litigation, there is no indication that either defendant or plaintiffs ever will assert any claims involving the Fredeen noncompete and confidentiality agreement. I am aware that unconscionability is assessed at the time the agreement is made,

2

but I see no reason to ignore the fact that the Fredeen noncompete and confidentiality exclusions that create the lack of complete mutuality have only slight, at best, relevance in the context of her individual PAGA claim—and none whatever in the context of Mitchum's claims.

The lack of mutuality in this case does not in my view show a high level of substantive unconscionability, but rather a low level.

Plaintiffs rely on cases involving arbitration agreements much different than this case, and involving claims much different than individual PAGA claims. In *Swain v. LaserAway Medical Group, Inc.* (2020) 57 Cal.App.5th 59, the agreement permitted the defendant to bring its claims for unpaid patient fees in court, while requiring the plaintiff to arbitrate her claims about the defendant's services. (*Id.* at p. 72.) The agreement "had additional indicia of substantive unconscionability," including "highly unconscionable" fee-splitting provisions with a requirement for "the most expensive kind of arbitration: one with a three-arbitrator panel," with costs that "would effectively prohibit" the plaintiff from seeking relief. (*Id.* at pp. 73, 74.) And, there was a provision prohibiting the plaintiff from seeking public injunctive relief that the defendant conceded was unconscionable. (*Id.* at pp. 65, 75.) These three provisions "were ' "sufficiently unfair" ' to ' "withhold enforcement" ' of the agreement." (*Swain,* at p. 75, quoting *OTO, supra*, 8 Cal.5th at p. 126.)

Similarly, in *Davis v. Kozak* (2020) 53 Cal.App.5th 897 (*Davis*), an age and sex harassment case, the court found "a 'high' degree of substantive unconscionability" in the combination of a nonmutual confidentiality provision and restrictive discovery

requirements. (*Id.* at p. 917.) The court identified "a restrictive arbitral discovery process that appears inadequate to protect vindication of [the plaintiff's] statutory rights, plus an unjustified, nonmutual provision that exempts [the employer's] most likely claims against employees from arbitration and allows it to pursue such claims in court with full discovery, trial, and appeal rights. Because these unconscionable provisions together indicate [the employer's] self-interested effort to impose an inferior forum on its employees, the trial court was within its discretion to conclude the agreement was permeated by unconscionability and should not be enforced." (*Id.* at p. 918.)

Again, the provisions challenged here simply do not reflect a similar "self-interested effort to impose an inferior forum" (*Davis, supra,* 53 Cal.App.5th at p. 918) on plaintiffs. [1]

---

[1] Other cases plaintiffs cite involve arbitration agreements with numerous advantages for employer claims and limitations on the plaintiff's significant rights, unlike the arbitration agreement in this case. (See *Ramirez v. Charter Communications, Inc.* (2022) 75 Cal.App.5th 365, 371, 383, review granted June 1, 2022, S273802 ["a high degree of substantive unconscionability" based on "the restriction of the statute of limitations for FEHA claims, the provision granting an award of attorney fees for a prevailing party in compelling arbitration, the lack of mutuality [excluding multiple types of claims more likely to be brought by the employer], and the limitation on discovery"]; *Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 234, 253 [provisions allowing the defendant to obtain injunctive relief in court while requiring the plaintiff to seek relief through arbitration, waiving the statutory requirement that the defendant post a bond or undertaking to obtain injunctive relief, and "effectively waiv[ing] [the plaintiff's] statutory right to recover her attorney fees if she prevail[ed] on

4

### b.    The arbitration confidentiality clause

I also find the provision requiring the parties to keep arbitration proceedings and their outcomes "strictly confidential" is at most marginally unconscionable in the context of these individual PAGA claims.

The prevailing view has been that arbitration confidentiality clauses are not unconscionable.  In *Sanchez v. CarMax Auto Superstores California, LLC* (2014) 224 Cal.App.4th 398, a wrongful termination case, the court

---

her Labor Code claims" presented "a moderate level of substantive unconscionability," making the arbitration provision unenforceable when combined with a moderate level of procedural unconscionability]; *Samaniego v. Empire Today, LLC* (2012) 205 Cal.App.4th 1138, 1147-1148 [provision shortening limitations period undermined statutory protections, and was "just one of several one-sided provisions," including requirement that the plaintiffs pay the defendant's attorney fees with no reciprocal obligation on the defendant, and "[i]n addition," an exemption for claims typically brought by employers]; *Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702, 719, 725 [in addition to exempting disputes regarding noncompete agreements and intellectual property rights, the agreement's limitations on discovery ran afoul of the minimum standards imposed by *Armendariz* "and fail to ensure that [the plaintiff] is entitled to discovery sufficient to adequately arbitrate her claims"]; *O'Hare v. Municipal Resource Consultants* (2003) 107 Cal.App.4th 267, 282 [written employment contract "lacks any modicum of bilaterality" because the employer "has expressly reserved any and all rights to file a lawsuit against [the plaintiff] regardless of the theory of liability or relief requested"; the agreement also improperly required the plaintiff to share costs and "its facial prohibition of discovery is in derogation of law"].)

5

described the provision as requiring "that the arbitration (including the hearing and record of the proceeding) be confidential and not open to the public unless the parties agree otherwise, or as appropriate in any subsequent proceeding between the parties, or as otherwise may be appropriate in response to governmental or legal process." (*Id.* at p. 408.) The court held: "The . . . provision requiring confidentiality is not unconscionable. In regard to 'the fairness or desirability of a secrecy provision with respect to the parties themselves, . . . we see nothing unreasonable or prejudicial about it,' and it is not substantively unconscionable." (*Sanchez,* at p. 408, quoting *Woodside Homes of California, Inc. v. Superior Court* (2003) 107 Cal.App.4th 723, 732; see also *Chin v. Advanced Fresh Concepts Franchise Corp.* (2011) 194 Cal.App.4th 704, 714 [finding no colorable claim of unconscionability in the arbitration confidentiality provision of a franchise agreement].)

The majority cites *Ramos v. Superior Court* (2018) 28 Cal.App.5th 1042 (*Ramos*), and *Hasty v. American Automobile Assn.* (2023) 98 Cal.App.5th 1041 (*Hasty*), where the courts found arbitration confidentiality clauses were substantively unconscionable in the context of a complaint for discrimination, harassment, and retaliation—not an individual PAGA claim. I do not find the rationale of those cases applies to this case which involves only individual PAGA claims, and I find no basis to extend the holdings of those cases to plaintiffs' individual PAGA claims.

*Ramos* reasoned that informal discovery was critical to prepare a case for discrimination, harassment or retaliation. The confidentiality provision would hamper the plaintiffs' ability to prove a pattern of discrimination, prevent them from taking

6

advantage of findings in past arbitrations, prevent them from informally contacting or interviewing witnesses outside the formal discovery process, and significantly increase the costs of discovery, thereby discouraging the vindication of plaintiffs' statutory rights. (*Ramos, supra,* 28 Cal.App.5th at pp. 1066-1067.)

The holding in *Hasty* was also limited to harassment, retaliation and discrimination claims. *Hasty* concluded the confidentiality clause in that case "benefits only [the defendant] with respect to harassment, retaliation, and discrimination claims, such as the claims here, and is thus substantively unconscionable." (*Hasty, supra,* 98 Cal.App.5th at p. 1062.) *Hasty* in turn relied on *Murrey v. Superior Court* (2023) 87 Cal.App.5th 1223, a sexual harassment case that stated *Sanchez* (which found no unconscionability in a confidentiality clause) was not persuasive "in the context of a workplace sexual harassment complaint." (*Murrey,* at p. 1254.) *Murrey* agreed with a sister state case finding a confidentiality provision " ' "serves no purpose other than to tilt the scales of justice in favor of the employer by denying access to any information about other claims against the employer to other potential victims of discrimination." ' " (*Ibid.*)

But no discovery from third party witnesses is necessary to prepare these individual PAGA claims for arbitration. Plaintiffs allege failure to provide meal periods and rest breaks; failure to pay meal and rest break premiums; failure to provide accurate itemized wage statements; and failure to reimburse personal cell phone expenses. These individual PAGA claims implicate only defendant's wage and hour compliance records and practices and plaintiffs' own personnel records. Certainly, if plaintiffs prevail

7

on their individual claims and pursue their representative claims in court, then the scope of discovery will expand to include other employees. This appeal concerns only the arbitration of plaintiffs' individual PAGA claims.

Plaintiffs quote liberally from *Ramos* but offer no explanation how the confidentiality clause might increase their discovery costs in the arbitration, or impede their access to the sorts of information necessary to arbitrate their individual PAGA claims, or thwart the vindication of their statutory rights. *Ramos, Murrey* and *Hasty* involve different and broader confidentiality clauses and many other unconscionability issues not raised in this case. Plaintiffs offer no analysis or practical considerations to support an extension of the reasoning of *Ramos* and *Hasty* to these individual PAGA claims, where confidentiality is not likely to have any impact on prearbitration discovery or the conduct of the arbitration.

## 2.    Severance

Since I find a low level of procedural unconscionability, as well as a low degree of substantive unconscionability in the only two provisions that are challenged in this case, I find the trial court could have and should have severed the two clauses and sent the PAGA claims to arbitration.

"In the context of severing unconscionable provisions from an arbitration agreement, 'the strong legislative and judicial preference is to sever the offending term and enforce the balance of the agreement . . . .' " (*Alberto v. Cambrian Homecare* (2023) 91 Cal.App.5th 482, 495.) "[T]he statute appears to give a trial court some discretion as to whether to sever or restrict the unconscionable provision or whether to refuse to enforce the entire agreement. But it also appears to contemplate the latter

8

course only when an agreement is 'permeated' by unconscionability." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 122 (*Armendariz*).)

One reason for severing terms is "to prevent parties from gaining undeserved benefit or suffering undeserved detriment as a result of voiding the entire agreement . . . ." (*Armendariz, supra,* 24 Cal.4th at p. 123.) The "overarching" question is whether severance serves the interests of justice. (*Id.* at p. 124.) *Armendariz* instructs: "Courts are to look to the various purposes of the contract. If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced. If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." (*Ibid.*)

Here, the trial court refused to sever the two provisions, stating: "[*Armendariz*] held that when an arbitration agreement is non-mutual, the court cannot cure the problem simply by striking unconscionable terms. Rather, the court would have to reform the contract, which the court cannot do." The trial court added that "severance is disfavored where, as here, the arbitration agreement contains more than one unconscionable term."

The trial court apparently construed *Armendariz* as supporting a refusal to sever unconscionable terms whenever there is a lack of complete mutuality in an arbitration clause. But that is not what *Armendariz* said. The court was addressing the "unconscionably unilateral arbitration clause" in the case before it when it stated that "the court would have to, in effect, reform the contract, not through severance or restriction, but by

9

augmenting it with additional terms." (*Armendariz, supra,* 24 Cal.4th at pp. 124-125.)  This was because, in *Armendariz,* there was no single clause that could be severed; the agreement to arbitrate applied only to the employee's claim of wrongful termination (*id.* at pp. 91-92).  The court would have had to "augment[] [the agreement] with additional terms." (*Id.* at p. 125.)

That is not the case here.  The exclusions and arbitration confidentiality clauses "can be extirpated from the contract by means of severance or restriction" (*Armendariz, supra,* 24 Cal.4th at p. 124), with no need to add additional terms.  Nor do those clauses justify a conclusion that the "central purpose of the contract is tainted with illegality," so that "the contract as a whole cannot be enforced." (*Ibid.*)  On the contrary, the clauses are clearly "collateral to the main purpose of the contract" (*ibid.*) and just as clearly can be excised with no effect on the remainder of the contract.

In some cases, "multiple defects" indicate a systematic effort to impose arbitration on an employee "as an inferior forum that works to the employer's advantage." (*Armendariz, supra,* 24 Cal.4th at p. 124.)  I do not see that here, where the Fredeen noncompete agreement has no application to a PAGA claim and defendant acknowledges it is unenforceable in any event.  (There was no noncompete agreement or confidentiality agreement in Mitchum's contract.)  And the authorities are clear that the presence of more than one objectionable term does not preclude severance; it is only one of the relevant factors in the trial court's severability inquiry.  (See, e.g., *Lange v. Monster Energy Co.* (2020) 46 Cal.App.5th 436, 455 (*Lange*).)

10

*Lange* agreed with a Ninth Circuit case stating the point this way: " 'In each case' regarding severance . . . 'the dispositive question is whether "the central purpose of the contract" is so tainted with illegality that there is no lawful object of the contract to enforce.' " (*Lange, supra,* 46 Cal.App.5th at p. 455, quoting *Poublon v. C.H. Robinson Co.* (9th Cir. 2017) 846 F.3d 1251, 1273.) In *Poublon,* the court limited one unenforceable provision, and severed another provision "that permits [the defendant], but not [the plaintiff], to seek judicial resolution of specified claims"; the court stated the provision could be extirpated without affecting the remainder of the clause "and is 'collateral to the main purpose of the contract,' which is to require arbitration of disputes." (*Poublon,* at p. 1273.) The same is true here.

GRIMES, J.

11